1  MARC E. MAYER (SBN 190969)
     mem@msk.com
2  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
3  Los Angeles, CA  90067-3120
   Telephone: (310) 312-2000
4  Facsimile: (310) 312-3100

5  Attorney for Plaintiffs
   TLM Partners, Inc. and Wargaming
6  (USA), Inc.

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  TLM PARTNERS, INC.;              CASE NO. 8:22-cv-01024
    WARGAMING (USA), INC.
12                                   **COMPLAINT FOR:**
              Plaintiff,
13                                   **(1) FALSE DESIGNATION OF**
         v.                          **ORIGIN [15 U.S.C. § 1125(A)];**
14
    JOHN DOES 1-10, inclusive,       **(2)  UNFAIR COMPETITION**
15                                   **[COMMON LAW AND CAL. BUS.**
              Defendants.            **& PROF. CODE § 17200];**
16
                                     **(3) FEDERAL CIVIL RICO –**
17                                   **CONSPIRACY**
                                     **(18 U.S.C. § 1962(D))**
18
                                     **DEMAND FOR JURY TRIAL**
19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

14145731.1

─────────────────────────────────────
                    COMPLAINT

1  TLM Partners, Inc. ("TLM Partners") and Wargaming (USA), Inc.

2  ("Wargaming") (together, "Plaintiffs") allege as follows:

3

4  **PRELIMINARY STATEMENT**

5  1.  This is an action for false designation of origin under the federal

6  Lanham Act, and unfair competition under California law.  By this action,

7  Plaintiffs seek to put an end to the willful and bad faith misappropriation of their

8  well-known trademarks and brand names by an organized enterprise of scammers,

9  "money mules," check counterfeiters, and other individuals.  In Defendants' scam,

10  they (or those working in concert with them) pose as Plaintiffs' employees in order

11  to steal money and bank account information, social security numbers, and other

12  personal identifying information used to commit identity theft (the "Job Scam

13  Enterprise").

14  2.  Defendants, operating as and through the Job Scam Enterprise, prey

15  upon aspiring professional artists, as well as other content developers and

16  designers, who are interested in employment with Plaintiffs.  To effectuate their

17  scheme, Defendants impersonate employees and in-house recruitment

18  professionals working for Plaintiffs (creating fake email, chat and text profiles

19  bearing Plaintiffs' brand names and logos), then set up and carry out a detailed

20  fake job application process – replete with numerous fake offer documents

21  emblazoned with Plaintiffs' marks.  After exploiting Plaintiffs' brand names and

22  marks to build trust with their victims, Defendants then trick and defraud them into

23  providing money and valuable, confidential personal information.

24  3.  Additionally, in order to conceal their identities and make the stolen

25  money hard to trace, certain of Defendants act as so-called "money mules."  These

26  individuals receive the stolen funds, intermingle them with other funds, and then

27  transmit the money to others, while retaining a percentage "commission" for

28  themselves.

Mitchell
Silberberg &
Knupp LLP
14145731.1

2
COMPLAINT

4.      Defendants' scam is appalling.  Their victims largely are young, unemployed and looking for jobs with well-established companies in the video game industry such as Plaintiffs.  Defendants prey on the hopes and dreams of these individuals in order to steal their identities and pillage their bank accounts.  Their use of the Plaintiffs' trademarks as a hook to trap victims (and would-be victims) not only harms these unsuspecting individuals, but also harms Plaintiffs' reputation and the goodwill of their respective brands.  Accordingly, the Court should enjoin any further use of Plaintiffs' names and marks by Defendants, order Defendants to compensate Plaintiffs for the damage done to their brands and talent recruitment efforts, and award treble and punitive damages against Defendants.

## **JURISDICTION AND VENUE**

5.      This is an action arising in part under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and under California statutory law.

6.      This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a) and (b), in that it involves an action arising under the Lanham Act.  This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

7.      Defendants are subject to personal jurisdiction in the state of California because the unlawful conduct complained of herein has taken place in and causes injury in this judicial district, including because Defendants (1) have directed their activities at California-based Plaintiff TLM Partners and its trademarks, (2) transact business in this judicial district, (3) use California-based social media platforms to conduct their scam, (4) on information and belief, employ California individuals and/or bank accounts to launder stolen money; (5) have stolen logos, letters, forms, and other materials from Plaintiff TLM Partners in California; and (6) on information and belief, have attempted to scam or

1   defraud, or actually have scammed and defrauded, individuals located in

2   California.

3       8.      Venue is proper in this judicial district pursuant to 28 U.S.C.

4   § 1391(b) in that a substantial part of the events giving rise to this Complaint

5   occurred in this judicial district.

6

7                               **THE PARTIES**

8       9.      Plaintiff TLM Partners is a corporation duly organized and existing

9   under the laws of the State of Delaware, with its principal place of business in

10   Irvine, California.

11       10.     Plaintiff Wargaming (USA), Inc. is a corporation duly organized and

12   existing under the laws of the State of Delaware, which operates a branch office

13   located in Austin, Texas.

14       11.     The true names and capacities, whether individual, corporate,

15   associate, or otherwise, of the defendants sued herein as Does 1-10 inclusive, are

16   unknown to Plaintiffs, which has therefore sued said defendants by such fictitious

17   names.  These defendants may include individuals whose real identities are not yet

18   known to Plaintiffs, but who are acting in concert with one another as part of the

19   Job Scam Enterprise in committing the unlawful acts alleged herein.  Plaintiffs will

20   seek leave to amend this complaint to state their true names and capacities once

21   said defendants' identities and capacities are ascertained.  Plaintiffs are informed

22   and believe, and on that basis avers, that all defendants sued herein are liable to

23   Plaintiffs as a result of their participation in all or some of the acts set forth in this

24   complaint.  (All of the aforementioned Doe defendants collectively are referred to

25   herein as "Defendants.")

26       12.     Plaintiffs are informed and believe, and on that basis aver, that at all

27   times mentioned in this complaint, each of the Defendants was the agent, alter ego,

28   or representative of each of the other Defendants and/or the Job Scam Enterprise,

Mitchell
Silberberg &
Knupp LLP
14145731.1

4
COMPLAINT

in doing the things averred in this Complaint, was acting within the course and scope of such agency.

## ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

### TLM Partners and Its Trademarks

13. TLM Partners is a prominent developer and publisher of competitive online video games. TLM Partners' products include the hugely popular online game "Heroes and Generals."

14. Since its inception in 2017, TLM Partners has continuously used the TLM and TLM PARTNERS brand names and common law trademarks in commerce in connection with its goods and services. These goods and services include video games and a variety of related advertisements and consumer products. Sometimes the TLM PARTNERS mark is accompanied by or included as part of a distinctive logo such as the following:



15. Examples of TLM Partners' prominent and consistent use of the TLM PARTNERS name and logo (collectively, the "TLM Marks") include but are not limited to the following:

(a) The TLM Marks have been and are displayed prominently and consistently on TLM Partners' website (www.tlmpartners.com) and those of its video games, including the website for Heroes and Generals (www.heroesandgenerals.com).

(b) The TLM Marks have been and are displayed prominently and consistently on and in TLM Partners' games, including on the screen displayed

Mitchell
Silberberg &
Knupp LLP

14145731.1

when the games are launched and on the Windows or MacOS file folder on which the game software is located.

(c)     The TLM Marks have been and are displayed prominently and consistently in connection with all amateur, professional, and semi-professional esports tournaments, including Heroes and Generals tournaments and leagues all over the world.

(d)     The TLM Marks have been and are displayed prominently and consistently on or in connection with a variety of merchandise, such as T-shirts, hats, sweatshirts, mugs, and stickers.

16.     TLM Partners has invested substantial time, effort, and resources developing and promoting its TLM Marks.  As a result of the foregoing, the TLM Marks have become known throughout the United States by members of the video game and software industry, gamers, and other members of the public.  TLM Partners has acquired an enormously valuable reputation and goodwill among the public as a result of such association.

17.     TLM Partners operates a fully remote, cloud-based development studio, which allows TLM Partners to competitively recruit and hire talented artists and designers all over the world, including and especially in California.  TLM Partners maintains excellence in the fields of both video game development and publishing through, *inter alia*, the successful recruitment of top artistic and design professionals.  As a fully remote studio, TLM Partners currently depends heavily upon *online* and remote recruitment, interview, evaluation and hiring processes. As set forth below, Defendants' actions have, and continue to, create confusion and erosion of trust among job applicants that has damaged TLM Partners' critically important recruitment efforts.

<u>Wargaming and its Trademarks</u>

18.     Wargaming is a prominent developer and publisher of competitive online video games.  Wargaming's products include the hugely popular online

Mitchell
Silberberg &
Knupp LLP
14145731.1

6
COMPLAINT

military-themed games, World of Tanks, World of Warships and World of Warplanes.

19.     Since its inception in 1998, Wargaming has continuously used the Wargaming brand names and trademarks in commerce in connection with its goods and services.  These goods and services include video games and a variety of related advertisements and consumer products.  Sometimes the WARGAMING mark is accompanied by or included as part of a distinctive logo such as the following:

  

20.     The WARGAMING mark and logo is also often accompanied by or included as part of Wargaming's LET'S BATTLE logo and mark such as the following:

  

21.     Examples of Wargaming's prominent and consistent use of the Wargaming name and logo (collectively, the "Wargaming Marks") include but are not limited to the following:

Mitchell
Silberberg &
Knupp LLP
14145731.1

(a)     The Wargaming Marks have been and are displayed prominently and consistently on Wargaming's website (https://na.wargaming.net) and those of its video games, including the websites for World of Tanks (https://na.wargaming.net/en/games/wot), World of Warships (https://na.wargaming.net/en/games/wows) and World of Warplanes (https://na.wargaming.net/en/games/wowp).

(b)     The Wargaming Marks have been and are displayed prominently and consistently on and in Wargaming's games, including on the screen displayed when the games are launched and on the Windows or MacOS file folder on which the game software is located.

(c)     The Wargaming Marks have been and are displayed prominently and consistently in connection with all amateur, professional, and semi-professional esports tournaments and leagues all over the world for World of Tanks, World of Warships and World of Warplanes.

(d)     The Wargaming Marks have been and are displayed prominently and consistently on Wargaming's online store (https://www.wargamingstore.com) and in connection with a variety of merchandise, such as clothing and apparel, mugs, and model kits.

22.     Wargaming has invested substantial time, effort, and resources developing and promoting its Wargaming Marks.  As a result of the foregoing, the Wargaming Marks have become known throughout the United States and the world by consumers, purchasers and members of the public.  Wargaming has acquired an enormously valuable reputation and goodwill among the public as a result of such association.

23.     Wargaming's success and reputation relies in significant part upon its ability to competitively recruit and hire talented artistic and design professionals all over the world.  Both due to the constrictions of the COVID-19 pandemic and the

global reach of the company, Wargaming currently depends heavily upon *online* and remote recruitment, interview, evaluation and hiring processes.

24.     Defendants' actions have, and continue to, create confusion and erosion of trust among job applicants that has damaged Wargaming's critically important recruitment efforts.

25.     In addition to its common law trademarks in Wargaming's Marks, Wargaming is the owner of numerous U.S. registrations in the U.S. Patent and Trademark Office ("PTO") for the WARGAMING.NET and LET'S BATTLE word marks and logos, including Registration Numbers 4,527,406 and 3,960,707 (Wargaming.net) and 4,560,762 (Let's Battle).  Among the goods and services encompassed by these registrations are entertainment services as well as printed matter, such as stationary, newsletters, stickers and decals.

### Defendants' Fake Recruiting Scam

26.     Plaintiffs are informed and believe, and on that basis allege, that beginning in 2021 and as early as 2020, Defendants collectively undertook an extensive, coordinated, and highly sophisticated fraud scheme using each of Plaintiffs' respective brand names, reputations, and Marks to manipulate and defraud aspiring video game artists and design professionals.  More specifically, Defendants defraud and steal from members of the public by dangling fake offers of employment with Plaintiffs, knowing that Plaintiffs' Marks have widespread recognition and carry enormous weight with such artists and designers.  The scam was, and continues to be, carried out in several stages.

27.     Plaintiffs are informed and believe, and on that basis allege, that initially, certain of the Defendants identify potential victims from among individuals with resumes, art portfolios, and contact information publicly listed on ArtStation, Linkedin, and other social medial platforms.  These Defendants

1  specifically target individuals that they believe are seeking employment

2  opportunities in the video game business.

3       28.     Plaintiffs are informed and believe, and on that basis allege, that after

4  identifying potential targets, certain of the Defendants then send their intended

5  victims an unsolicited email – masquerading as Human Resources professionals

6  employed by Plaintiffs – sharing information about a fake job opening with

7  Plaintiff.

8       29.     In their emails to their victims, one or more of the Defendants

9  specifically impersonate Plaintiffs' employees, purporting to hold titles such as

10 "HR Manager" and "HR Coordinator."  None of these individuals, nor any other of

11 Plaintiffs' employees, have given or shared any authority with Defendants to

12 communicate with anyone on Plaintiffs' behalf.  These Defendants also use

13 deceitful and confusing email addresses such as "info@wargaming.careers" and

14 "info@tlmpartners.careers" to create the false impression they are communicating

15 on behalf of Plaintiffs.  Plaintiffs have never given Defendants any permission or

16 authority to use any of Plaintiffs' Marks or the names of any of Plaintiffs'

17 employees.

18      30.     Plaintiffs are informed and believe, and on that basis allege, that either

19 with the initial communication or sometime thereafter, one or more of the

20 Defendants create and distribute to the intended victim a bogus document

21 advertising a fake job opening.  This counterfeit document is emblazoned with

22 Plaintiffs' Marks, and repeatedly uses the names TLM Partners and Wargaming.

23 Attached as Exhibit A is a true and correct copy of the fake job advertisement

24 document used by Defendants while impersonating TLM Partners.  Attached as

25 Exhibit B is a true and correct copy of the fake job advertisement document used

26 by Defendants while impersonating Wargaming.

27      31.     The fake job advertisement includes fake details regarding a purported

28 open "position summary" and that position's "benefits and perks" as well as

instructions for "How To Schedule Interview[.]"  *See* Exhibit A, B.  The fake job advertisement (or accompanying email) invites the victim to participate in a so-called job interview via a chat platform such as Microsoft Kaizala or Wire.  *Id.*

32.     Plaintiffs are informed and believe, and on that basis allege, that during or before the chat "interview," one or more of the Defendants tell the potential victim that the interview will be held with an employee of Plaintiffs, who has the authority to evaluate candidates for a job or potential job opening with Plaintiffs.  The Defendant acting as the interviewer then asks the victim questions about their background, job history, skills and other information in a manner that tricks and deceives the victim into believing they are engaging in an interview to access their qualifications for a job or potential job with Plaintiffs.  One or more of Defendants may also send text messages to their victims, using text message profiles that bear the Plaintiffs' Marks.  Defendants conduct the chat and text interviews while falsely stating that they are employees of Plaintiffs.

33.     Plaintiffs are informed and believe, and on that basis allege, that a short time after the chat or text interview concludes, one or more of the Defendants send a fake offer of employment or "contract letter" to the victim.  In order to make these fake documents convincing, the Plaintiffs' Marks are carefully placed on the documents.  Thus, the victims are deceived into believing that the documents are actual employment-related documents for an actual job with Plaintiffs.

34.     Plaintiffs are informed and believe, and on that basis allege, that Defendants ask their victims to fill out and sign the fake employment offer and onboarding documents.  Many of the prompts within these fake documents call for confidential personal information ("PII"), including financial and bank account information.

35.     Plaintiffs are informed and believe, and on that basis allege, consistent with the U.S. Federal Bureau of Investigation ("FBI") April 21, 2021 communique

describing FBI investigations into Job Scams, one or more of the Defendants use the PII that they gather from these fake documents for a number of illegal and nefarious purposes, including taking over the victims' bank accounts, opening new financial accounts in the name of the victim, or using the victims' identity for another deception scam, such as obtaining fake driver's licenses or passports.

36.   Additionally, Plaintiffs are informed and believe, and on that basis allege, that either during the interview or shortly thereafter, one or more of Defendants instruct the intended victim to send money to a bank account or online payment account in order to purchase tools that are necessary for the fake job. These tools include, *inter alia*, expensive technology such as iPads, Macbooks, and software.  *See* Exhibit A, B.

37.   Plaintiffs are informed and believe, and on that basis allege, that in many cases, either before or after the victim makes payments, Defendants or those working in concert with them send fake or counterfeit "reimbursement" checks to the victim's email address with instructions to be printed and deposited into their bank of choice.  These checks often are scheduled to arrive on a Friday, so that any money transfers that may still be in process from the victim can clear before the victim learns that the reimbursement check is counterfeit.

38.   Plaintiffs are informed and believe, and on that basis allege, that among the Defendants in this action are individuals who have been recruited to assist with the transfer and laundering of money, known by law enforcement as "money mules."  These Defendants provide the U.S. bank accounts or online payment accounts where the victims' money can be deposited.  Once payment is received, these Defendants then "launder" the money by intermingling it with their own finances and then sending a portion to other Defendants, either through wire transfer or personal check.  These "money mule" Defendants know or have reason to know that they are participating in and facilitating the recruiting scam, but are

1    incentivized to assist the other Defendants because they receive a significant

2    portion of the revenue from the scam.

3         39.     Plaintiffs are informed and believe, and on that basis allege, that all

4    Defendants have, working together and through the Job Scam Enterprise, acted and

5    conspired to defraud, and continue to act and conspire to defraud numerous victims

6    out of a significant amount of money and/or have used their victims' identities for

7    nefarious, illegal purposes.

8

9                          **FIRST CLAIM FOR RELIEF**

10                     **FALSE DESIGNATION OF ORIGIN**

11                         **(15 U.S.C. § 1125(a))**

12        40.     Plaintiffs incorporate herein by reference the averments of paragraphs

13   1 through 39 as though fully set forth herein.

14        41.     Plaintiffs, as the owners of all common law right, title, and interest in

15   and to each of their respective (TLM and Wargaming) Marks, has standing to

16   maintain an action for false designation of origin under Section 43(a) of the

17   Lanham Act, 15 U.S.C. § 1125.

18        42.     Defendants have, without authorization, on or in connection with its

19   false recruitment services, used in commerce marks that are confusingly similar to

20   the Plaintiffs' Marks, and/or have made false designations of origin which are

21   likely to cause (and/or have caused) confusion or mistake or to deceive as to the

22   affiliation, connection or association of Defendants with Plaintiffs, and/or as to the

23   origin, sponsorship or approval of Defendants' recruitment services.

24        43.     Plaintiffs are informed and believe, and on that basis allege, that the

25   conduct of Defendants has been knowing, deliberate, willful, and has been

26   intended to cause confusion, or to cause mistake, or to deceive, in blatant disregard

27   of Plaintiffs' rights.

28

Mitchell
Silberberg &
Knupp LLP

14145731.1

44.     Defendants knew or by the exercise of reasonable care should have known that the adoption and commencement of use in commerce and continuing use of marks that are confusingly similar to Plaintiffs' Marks would cause confusion, mistake, or deception among purchasers, users and the public.

45.     Defendants' wrongful conduct has permitted or will permit them to improperly obtain money and other financial and non-financial benefits based on the strength of Plaintiffs' marketing, advertising, sales and consumer recognition. The use of Plaintiffs' Marks allows Defendants to build trust with, and then defraud, members of the public.  As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiffs have been deprived and will be deprived of the value of their Marks, including in the field of talent recruitment, in an amount as yet unknown but to be determined at trial.  Plaintiffs seek an accounting of Defendants' profits, and requests that the Court grant Plaintiffs three times that amount.

46.     Defendants' acts and omissions have caused and, unless restrained by this Court, will continue to cause Plaintiffs to suffer great and irreparable damage and injury through, *inter alia*, (a) a likelihood of confusion, mistake, and deception among members of the public, including those seeking potential employment with Plaintiffs, as to the source of the infringing services; (b) the loss of Plaintiffs' valuable goodwill and reputation symbolized by their Marks; and (c) the loss of Plaintiffs' ability to recruit necessary and valuable top artistic and development talent.  Plaintiffs have no adequate remedy at law.

47.     Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including Defendants' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

48.     Upon information and belief, Defendants have deliberately and willfully used the Infringing Marks in an attempt to capture initial consumer trust

and to trade upon the enormous goodwill, reputation and trust developed by Plaintiffs in connection with their Marks, as well as in order to confuse consumers as to the origin and sponsorship of Defendants' actions and recruitment services. Upon information and belief, the intentional nature of the aforementioned acts renders this an exceptional case under 15 U.S.C. § 1117(a), and Plaintiffs are further entitled to their attorneys' fees and costs of suit herein pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF

### UNFAIR COMPETITION

**(Common Law and Cal Bus. & Prof. Codes 17200, 17208, and 17500, *et seq.*)**

49.     Plaintiffs incorporate herein by reference the averments of paragraphs 1 through 48, as though fully set forth herein.

50.     Defendants have, by reason of the foregoing acts, engaged in unfair and fraudulent business practices.

51.     Defendants' acts have impaired or will impair Plaintiffs' business and have otherwise adversely affected Plaintiffs' business and reputation by use of unfair and fraudulent business practices in violation of California common law and the California Business & Professions Code, including Sections 17200 to 17208, 17500, *et seq.*, and the common law.

52.     Plaintiffs are informed and believe, and on that basis allege, that Defendants' acts have caused and, unless restrained by this Court, will continue to cause Plaintiffs to suffer great and irreparable damage and injury.  Plaintiffs have no adequate remedy at law.

53.     Plaintiffs are informed and believe, and on that basis allege, they will suffer loss of profits and other damage to the growth of their respective businesses as a result, in an amount to be proven at trial.  On the statutory unfair competition claim, Plaintiffs seek only disgorgement of profits and do not seek damages at law.

Mitchell
Silberberg &
Knupp LLP

14145731.1

# THIRD CLAIM FOR RELIEF

## FEDERAL CIVIL RICO – Conspiracy

### (18 U.S.C. § 1962(d))

54.　Plaintiffs incorporate herein by reference the averments of paragraphs 1 through 53, as though fully set forth herein.

55.　Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

56.　In violation of 18 U.S.C § 1962(d), Defendants knowingly, willfully and unlawfully conspired and continue to conspire to facilitate and carry out the above-described job scam, which included the operation of a Job Scam Enterprise through a pattern of planned and intended racketeering activity as alleged and described below.

57.　The conspiracy commenced at least as early as 2020 and is ongoing.

58.　Defendants had the specific intent to engage in the substantive RICO violations alleged herein.

59.　Upon information and belief, each Defendant committed at least one overt act in furtherance of the conspiracy, including *inter alia* working through and as part of the Job Scam Enterprise to identify potential victims, facilitate communications with victims and/or the creation or transfer of fraudulent documents and fraudulent financial instruments.

60.　The purpose of Defendants' acts was to advance the overall object of the conspiracy, which in turn was to defraud individuals by specifically misusing Plaintiffs' marks and impersonating Plaintiffs' employees.  The harm to Plaintiffs was a reasonably foreseeable consequence of Defendants' actions.

61.　Each Defendant violated 18 U.S.C. § 1962(d) by the acts and conduct described above, and further described below as part of the Job Scam Enterprise, and Plaintiffs were injured as a result.

## The Job Scam Enterprise

62.     Defendants together form an association-in-fact, *i.e.*, the Job Scam Enterprise, in the pursuit of a common and continuing purpose.  As described herein, that purpose is to obtain money and valuable PII by misusing Plaintiffs' Marks and falsely impersonating Plaintiffs' employees.

63.     Defendants are members of the Job Scam Enterprise, and they coordinate and work together in order to pursue and carry out the Enterprise's purpose.  As described herein, in order to choreograph that scam, Defendants necessarily must, and do, establish relationships among their group as members of the Job Scam Enterprise in order to carry out a common course of conduct, *i.e.,* a complex and multi-stage scam.  The scam requires Defendants to maintain a web of detailed lies throughout the course of multiple and repeated interactions with each victim.

64.     The Defendants have operated the Job Scam Enterprise with the longevity sufficient for them to form and pursue a common and consistent purpose of defrauding members of the public through the above-detailed, and very specific, means.  The Defendants have together operated and acted through the Job Scam Enterprise for at least a year and a half, carrying out the same and substantially similar Scam with a substantial number of victims.  The fraudulent scam documents created and shared by Defendants impersonating each Plaintiff are largely identical.  *See* Exhibit A, B.

65.     The Job Scam Enterprise thus constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).

66.     The Job Scam Enterprise has engaged in, and their activities have affected, interstate commerce.  Defendants have, and continue to, target individuals in many states across the country, and fraudulently procure from their victims the transfer of money, documents, and valuable personally identifiable information across state lines.

1    <u>Pattern of Racketeering Activity</u>

2    67.    Defendants have, and continue to, conspire to engage in a continuing

3    pattern of racketeering activity through the Job Scam Enterprise.  Defendants, each

4    of whom are separate persons associated with, or employed by, the Job Scam

5    Enterprise, has and continues to knowingly, willfully and unlawfully conspired to

6    contribute to, or assist in the conduct of, the affairs of the Job Scam Enterprise

7    through this racketeering activity within the meaning 18 U.S.C. § 1961(1), 1691(5)

8    and 1962(c).

9    68.    Defendants have, and continue to, conspired to undertake, carry out or

10   make possible racketeering activity through Defendants' regular and repeated use

11   of the resources of the enterprise.  The resources of the Enterprise include creation

12   of and access to email accounts, chat and text messages accounts that falsely

13   purport to be in the name of Plaintiffs' employees.  The resources of the Enterprise

14   also include the creation of and access to a large trove of fake job offer and

15   information documents emblazoned with Plaintiffs' Marks, access to resources

16   sufficient to counterfeit convincing fake checks or money order documents, and

17   creation of and access to scripts and/or other common instructions to carry out fake

18   job "interviews."  *See, e.g.,* Exhibit A, B.

19   69.    Defendants' planned acts of racketeering activity were certainly

20   related and continuous, if not nearly identical.  *Compare* Exhibits A, B.

21   Defendants have conspired to perpetuate the same steps as across numerous

22   individual cases of attempted fraud involving numerous separate victims.  As

23   described herein, Defendants have attempted numerous, and certainly more than

24   two, instances of the job scam with the same or similar purpose and result,

25   participants, methods of commission and similarly selected and/or situated victims.

26   70.    Defendants' repeated conduct has occurred during a period of time

27   beginning in 2020 and continuing to the present.  The conduct is ongoing, and

28   there is a continued threat of repetition of such conduct.

18
COMPLAINT

1

<u>Predicate Act of Racketeering Activity</u>

2   71.   The conduct Defendants' have conspired to engage in constitutes

3   predicate acts of racketeering activity within the meaning of the indictable offenses

4   listed within 18 U.S.C. § 1961(1)(B), as more specifically alleged below.

5   72.   Each Defendant has committed at least one overt act in furtherance of

6   the conspiracy to carry out such racketeering activity, including *inter alia*

7   identifying potential victims, communicating with victims, facilitating

8   communications with victims and/or the creation or transfer of fraudulent

9   documents.

10   **Wire Fraud, 18 U.S.C. § 1343**

11   73.   Defendants conspired to commit acts constituting indictable offenses

12   under 18 U.S.C. § 1343.  They devised and have each acted to carry out and/or

13   further a detailed scam to defraud numerous members of the public by means of

14   numerous false and fraudulent pretenses, representations, and promises in order to

15   obtain money and valuable PII from them.  These false and fraudulent pretenses,

16   representations and promises included: that Defendants were Plaintiffs' actual

17   employees, that Defendants had the authority to consider an individual for

18   employment with Plaintiffs, that a job opening existed with Plaintiffs, that false

19   and fake documents branded with Plaintiffs' Marks were created by Plaintiffs

20   and/or constituted valid and binding documents and contracts issued by Plaintiffs,

21   that Plaintiffs were requesting and/or requiring the provision of money and

22   valuable PII in order to be considered for, or gain, employment with Plaintiffs, and

23   that valid reimbursement for monies transferred or expended would be given.

24   74.   For the purpose of executing the above-described job scam and

25   various false and fraudulent pretenses, representations and promises, Defendants

26   planned for the delivery of various documents, statements and communications to

27   be transmitted across state lines by means of wire communications such as email,

28   text message, and internet chat message.

Mitchell
Silberberg &
Knupp LLP

14145731.1

75.    Defendants conspired to use these wire transmissions and document deliveries to induce members of the public to transmit money by way of interstate money transfer applications, as well as the communication of valuable PII across state lines.

76.    Plaintiffs have been, and continue to be, damaged as a direct and proximate result of Defendants' participation in such conspiracy.  Defendants' fraudulent impersonation of Plaintiffs' HR and recruiting professionals and misuse of Plaintiffs' Marks damages the value of Plaintiffs' valuable trademarks, brand name and business reputation, as well as substantially damages and interferes with Plaintiffs' ability to successfully recruit top artistic and design talent.

**Transport and Receipt of Stolen Money, 18 U.S.C. §§ 2314, 2315**

77.    Defendants conspired to commit acts indictable offenses under 18 U.S.C. §§ 2314, 2315.  Having devised and carried out a complex scheme to obtain money from members of the public by false or fraudulent pretenses, representations or promises, Defendants conspired to receive and/or cause to be transport across state lines money taken by fraud.  Upon information and belief, Defendants planned and conspired to seek from identified victims monies in excess of $5,000.  Defendants sought fake "reimbursements" for expensive items such as computers, tablets and software.  *See* Exhibit A, B.  Defendants' acts were done intentionally, willfully, and with knowledge that the monies would be taken by fraud – and with the specific intent to successfully carry out Defendants' job scam.

78.    Plaintiffs have been, and continue to be, damaged as a direct and proximate result of Defendants' participation in such conduct.  Defendants' detailed conspiracy to receive and transport significant sums of monies taken by fraud on the basis of fraudulent misuse of Plaintiffs' Marks and brand names – and the impersonation of Plaintiffs' employees – has damaged, and continues to damage, the value of Plaintiffs' valuable trademarks and Plaintiffs' business

reputation, as well as substantially damage and interfere with Plaintiffs' ability to successfully recruit top artistic and design talent.

## **PRAYER FOR RELIEF**

WHEREFORE, as to all Counts of this Complaint, Plaintiffs request that this Court enter a judgment and declaration in favor of Plaintiffs and against Defendants as follows:

A.     Preliminarily and permanently enjoining and restraining Defendants, all entities under their control, as well as their licensees, partners, assigns, related entities, predecessors, successors, employees, representatives, trustees, receivers, agents, and any other persons or entities acting on behalf of Defendants or with Defendants' authority, from:

(1) using, copying, affixing to any document, or communicating under or in connection with any trade name, trademark, service mark, or other designation of origin that is comprised in whole or in part of Plaintiffs' Marks, the phrase TLM, TLM PARTNERS, WARGAMING, WARGAMING.NET or LET'S BATTLE, or any terms, designs or styles confusingly similar thereto; or

(2)     doing any act or thing that is likely to induce the belief that Defendants' activities or offer of services are in some way connected with TLM, Wargaming, or their respective businesses, or that is likely to injure or damage Plaintiffs or Plaintiffs' Marks; and

B.     Ordering Defendants to:

(1)     pay Plaintiffs the compensatory damages sustained by Plaintiffs as a result of the unlawful acts alleged herein and that such damages be trebled pursuant to 18 U.S.C. § 1964 as well as 15 U.S.C. § 1117 because of the willful and unlawful acts alleged herein;

(2)     pay Plaintiffs punitive damages as a consequence of the willful

1    and wanton acts alleged herein;

2            (3)    account for and pay over to Plaintiffs all gains, profits and

3    advantages derived from the unlawful acts alleged herein and/or as a result

4    of unjust enrichment;

5            (4)    deliver up for destruction all materials that bear the Infringing

6    Marks, including without limitation all letterhead, written materials and

7    email or text, chat or phone accounts;

8            (5)    reimburse Plaintiffs for the costs it has incurred in bringing this

9    action, together with its reasonable attorneys' fees and disbursements; and

10   C.      Awarding Plaintiffs such other and further relief as this Court may

11   deem equitable.

12

13   DATED: MAY 20, 2022              MARC E. MAYER
                                      MITCHELL SILBERBERG & KNUPP LLP
14

15

16                                    By:  */s/ Marc E. Mayer*
                                          Marc E. Mayer (SBN 190969)
17                                        Attorney for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

14145731.1

1

## **<u>DEMAND FOR JURY TRIAL</u>**

2

3

      TLM Partners, Inc. and Wargaming (USA), Inc. hereby demand a trial by

4

jury on all matters so triable.

5

DATED: MAY 20, 2022          MARC E. MAYER

6                            MITCHELL SILBERBERG & KNUPP LLP

7

8                            By: */s/ Marc E. Mayer*

9                                Marc E. Mayer (SBN 190969)
                                 Attorney for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# EXHIBIT A

# EXHIBIT B

**OVERVIEW:**

An award-winning online game developer and publisher. One of the leaders in the free-to-play MMO market, the company delivers authentic gaming experiences and services across PC, console and mobile platforms. We are an international team with over 20 years' experience in the video game industry. We're passionate about what we do. We have fun while we do it and love creating great games just as much as we enjoy playing them.

Wargaming is a powerful portfolio of iconic entertainment and sports brands. We bring people, technology, and the world's best storytellers together to drive culture and meaningful connection. We believe the enduring power of stories can open our eyes to the world, to each other, and to new and different perspectives.

Wargaming is bringing "Cross-Play" games to the market built on its platform for new technologies. We develop "play anywhere" experience and publishing original games. In our relentless pursuit of innovation, we seek out, foster, and encourage the creative spark of future developers, leveraging our expertise to teach and mentor them to their greatest potential. Our embrace of technologies in the cloud enables our team members to work from anywhere in the world, while feeling right at home. Our foundation is a galaxy of developers living creatively around the planet, all within the reach of our Virtual Private Cloud 'VPC' infrastructure. Allowing all of us to collaborate in ever-expanding creativity. If you're ready to roll up your sleeves, take on new challenges, and drive massive growth, you're going to feel very much at home here.

**PRINCIPLES:**

**SERVE-** Seek out, Foster, and encourage the creative part of team members at every level. Leverage expertise to teach and mentor to the greatest potential.

**SUCCEED-** Deliver amazing results at every level.

**DISRUPT-** Change the game.

**SERVE-** Seek out, foster, and encourage the creative spark of team members at every level. Leverage expertise to teach and mentor to the greatest potential.

To fundamentally change the way video games are developed and fulfill the concept of Gaming together. Anytime, anywhere, any device.

Break down barriers and reimagine the gaming industry through new technologies, partnerships and publishing initiatives within a limitless studio that has no borders

Relentlessly pursue solutions in the video game and adjacent industries, both in technology and in the market that are truly ground-breaking.

Create an environment and culture that breeds excellent, inclusive team bonds, and products that surpass all expectations.

**COVID 19:** Due to the pandemic, compromises will be made during the onboarding process. We urge potential candidates to trust Wargaming as a company and be rest assured that the company would be responsible for any measures taken during onboarding with your assigned hiring manager towards getting you started with work remotely. Thanks in advance for understanding!

**NOTE**: There are two position available in Wargaming which are **Lead VFX Artist and Lead 3D Artist,** kindly go ahead with your interview and specify the position you will fit in with your interview manager.

**Lead VFX / 3D Artist**

**Art & Animation · Wargaming Remote, Global**

We offer a 100% remote working environment as a "Cloud Studio" with awesome benefits to support a harmonious work life balance from anywhere in the world.  Come join our vision to build a world class studio.

**Position Summary:**

Job Type: Full-time
Salary- $60/hr
Work Hours- 40hrs per week (Flexible) Mon-Fri



**Lead VFX Artist Responsibilities** include, but are not limited to:

- Collaborate with the Art Director to lead our team of talented VFX Artists as they develop, optimize, and maintain VFX libraries used by the game development teams.

- Lead by example by creating target examples of visually stunning VFX that are highly optimized.

- Collaborate and communicate with other department leads to create world-class visual effects that are delivered on time to meet production schedules and milestone requirements.

- Lead efforts in the evaluation, adaptation, and training of workflows for creating and implementing real-time visual effects for games.

- Lead the on-going efforts for optimizing and improving existing VFX assets and systems

- Be self-driven and execute at a high-level of professionalism and proficiency.  Support and mentor your team always. We are all Servant Leaders here at Wargaming.

**3D Artist Responsibilities include, but are not limited to:**

- Help build our brand identity and showcase our products as we begin crossing into motion graphics
- Conceptualize, develop and Design impactful realistic 3D renderings and motion graphics for product visualization
- Evaluate and convert all current 3D renderings from MODO to Cinema4D
- Create realistic 3D renderings of all products and product packaging
- Identify opportunities to bring new ideas and innovative ways for products to be showcased
- Own projects from start to finish
- Review and enhance 3D designs for existing products
- Collaborate with our digital marketing team to create premium content for social media, ecommerce, and digital platforms
- Ability to work with assets across different software packages and translating files to retain all information

**Benefits & Perks:** Medical, Retirement savings, Wellness Program, Education assistance, Maternity leave, Fertility and infertility services, Dental, Vision, Life & Disability Insurance, Flexible Spending Accounts, Group Accident/Hospitalization.

**NOTE:** You will undergo a 2-week training with your assigned supervisor via the company's online portal as soon as your work equipment's are in place. He/she will be training you on how to logon, navigate the company's portal and complete your tasks using the hardware's and software's sponsored by the company. The pay is $50/hr. during the training period and $60/hr. once done with training. You will be working 40hrs per week in this full-time position, work hours are completely flexible, meaning you can set your own suitable hours in each working day to logon and get some work done. Workdays are Monday-Friday and overtime would be available after working with the company for 2 months. Your hiring manager below would help with any clarifications you need, feel free to ask questions during your interview/screening.

**You will be advised on how to receive the following:**

Apple - MacBook Pro 16" Laptop - Intel Core i9 - 64GB Memory - 8TB SSD

Wacom - Intuos Pro Paper Edition Pen Tablet (Large)

Apple - 11-Inch iPad Pro (Latest Model) with Wi-Fi + Cellular - 1TB (Unlocked)

G-Technology - G-DRIVE mobile USB-C 5TB External USB 3.1 Gen 1 Portable Hard Drive

HP Smart Tank Plus 555 All-in-One Wireless Inkjet Printer

Sony - WH-XB900N Wireless Noise Cancelling Over-the-Ear Headphones



**Exhibit B**
**Page 30**

**Bundled Software List:**
3ds Max (Autodesk)
Animate (Adobe)
Maya
Adobe After Effects
Maxon Cinema 4D, V-Ray, Nuke, Eyeon Fusion, etc.
**Tailor software's made for all personnel.**
Private Comm. portal v2.0
E-desk sync v4.0
Time Lynx (Time Billing software) v4.8

**HOW TO SCHEDULE INTERVIEW:**
Download Microsoft Kaizala secure messenger on your mobile device, PC or tablet and follow the simple onscreen signup procedure to create a personal account. Add your Interview Manager number +15162175137 (Aaron Weiss) to your contact then go to the App click on New Chat to add your Interview Manager and start a new conversation and you can also send back an email to clarify if any difficulties arise.

**Interview Manager:** Aaron Weiss

**Position:** HR Coordinator

**Interview Code:** WG/HR-009



Exhibit B
**Page 31**